UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **RAMIRO R. CARRIZALES,** | § | |
| **#52005-280** | § | |
| | § | |
| **Movant,** | § | **SA-20-CV-1072-XR** |
| | § | **SA-17-CR-391-XR-13** |
| **v.** | § | |
| | § | |
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **Respondent.** | § | |

**ORDER**

Before the Court is Movant Ramiro R. Carrizales' *pro se* Motion pursuant to 28 U.S.C. § 2255 ("Section 2255 Motion") to vacate, set aside, or correct his sentence imposed following a conviction for Hobbs Act conspiracy and conspiracy to distribute fifty grams or more of methamphetamine and 100 grams or more of heroin (ECF No. 2082); and the Government's Response in opposition thereto. (ECF No. 2132). For the following reasons, the Section 2255 Motion is **DENIED**.

**BACKGROUND**

Carrizales' conviction arises from his participation in the drug distribution and racketeering activities of the Texas Mexican Mafia (TMM), of which Carrizales was a member.[1] An FBI investigation revealed that TMM associates were involved in an elaborate and sophisticated conspiracy to distribute narcotics, control narcotics distribution within defined territories, and collect drug proceeds for members and a "tax" called the "dime" from non-members trafficking

---

[1] The factual background is derived from the Plea Agreement. (ECF No. 928).

drugs within the TMM's claimed territory. TMM members sourced narcotics from each other and ultimately from international Mexican drug cartels.

The investigation revealed through surveillance, wire intercepts, source information, evidence seized in search warrants, and other means, that Carrizales was an active participant in the Hobbs Act conspiracy and the drug conspiracy, which began on or about January 1, 2015 and continued through May 19, 2017. As a TMM member, Carrizales was aware that members and associates of the TMM were moving multi-kilogram drug quantities. Every person who participated in home invasions for the TMM was aware that those activities were enforcement operations to facilitate and further the drug trafficking operations of the TMM. Guns were also used as part of these operations, and all TMM members knew that firearms were used for that purpose.

Carrizales sold one ounce of methamphetamine to another person in the parking lot of the Dellview Market Place in San Antonio, Texas, on December 3, 2015. A ranking TMM member brokered the transaction, which was audio recorded and surveilled by agents. On March 28, 2016, Carrizales was intercepted on a consensual wire intercept telling another person that he would leave "the stuff" with "Mikio" (co-defendant Miguel Hernandez) and for the other person to call Hernandez when ready. On March 29, 2016, at the direction of Carrizales, Hernandez sold approximately one ounce of methamphetamine to another person in the parking lot of Studio 6 in San Antonio.

On April 11, 2016, Carrizales collected a $400 dime payment from another individual in a parking lot located at the intersection of Interstate 10 West and Vance Jackson in San Antonio. During the meeting, Carrizales telephonically contacted TMM Northside Lieutenant and co-defendant Fernando Gonzales and advised the other person they would now be reporting to

Gonzales. Carrizales was asked if he could help the other person purchase a firearm. Carrizales responded indicating "the canton" had weapons. At the time Carrizales committed the aforementioned acts, he was serving a term of supervised release for a 2010 Hobbs Act conspiracy conviction in Case No. 5:09-cr-465-XR-3.

On June 21, 2017, a federal grand jury returned a Superseding Indictment charging Carrizales and thirty-six co-defendants with crimes relating to their involvement in the TMM from January 1, 2015, to May 19, 2017. (ECF No. 402). The Superseding Indictment charged Carrizales with two counts: (1) conspiracy to interfere with commerce by threats or violence (Hobbs Act conspiracy), in violation of 18 U.S.C. § 1951 (Count One); and (2) conspiracy to distribute fifty grams or more of a mixture or substance containing a detectable amount of methamphetamine and 100 grams or more of a mixture or substance containing a detectable amount of heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841 (b)(1)(B) & 846 (Count Two). The Magistrate Judge appointed attorney Allen F. Cazier to represent Carrizales. (ECF No. 143).

On January 9, 2018, Mr. Cazier moved for authority to employ Mr. Franklin Olvera, a retired Senior U.S. Probation Officer and Sentencing Guidelines instructor, to assist in structuring a plea agreement and sentencing memoranda in Carrizales' case. (ECF No. 677). The Court granted the motion. (ECF No. 681). On April 4, 2018, the Government filed an "Advisory to the Court and Parties Regarding Plea Agreements," in which the Government advised as follows:

1. Most of the Defendants in this case have previously been provided plea agreements. The offer of a plea to these plea agreements are revoked effective immediately.

2. As has been communicated to many of the attorneys in this case, it is anticipated that this matter will be superseded in the future.

3. For Defendants that wish to plead to charges in the current indictment pursuant to a plea agreement, new (and shorter in terms of language) plea agreements

3

will be made available upon request. After the case is superseded, all existing offers will be withdrawn.

(ECF No. 840). On April 9, 2018, Mr. Cazier moved for additional authorization for funding of Mr. Olvera's services. (ECF No. 857). In the request, Mr. Cazier indicated that plea negotiations were underway, and settlement was likely. (*Id.*). The Court granted the motion. (ECF No. 865).

On April 30, 2018, Carrizales pleaded guilty to Counts One and Two pursuant to a Plea Agreement. (ECF No. 928). In exchange for the guilty plea, the Government promised to dismiss the remaining charges against Carrizales and refrain from further prosecuting Carrizales for the conduct giving rise to the charges in the Superseding Indictment. (*Id.* at 1). The Government further agreed not to oppose the award of a two-level downward adjustment for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a) and agreed to move for an additional one-level decrease pursuant to § 3E1.1(b) if various conditions set forth in the Plea Agreement were met. (*Id.* at 8).

Thereafter, a United States probation officer prepared an initial Pre-Sentence Report (PSR). (ECF No. 1327). The PSR identified Carrizales as an active participant in both conspiracies and a confirmed "carnal" of the TMM. (*Id.* at ¶ 16). As to Count One, Hobbs Act conspiracy, the PSR calculated a base offense level of 18 pursuant to U.S.S.G. § 2B3.2(a). (*Id.* at ¶ 28). The PSR further applied a two-level upward adjustment pursuant to § 2B3.2(b)(1) because the offense involved an express or implied threat of death, bodily injury, or kidnapping. (*Id.* at ¶ 29). The PSR found that the defendants enforced payment of the "dime" tax by robbing, beating, and threatening to kill those who did not comply. (*Id.*).

The PSR further applied a three-level upward adjustment pursuant to § 2B3.2(b)(2) because the total amount of money extorted in the conspiracy was approximately $862,000.00. (*Id.* at ¶ 30). The PSR further applied a six-level upward adjustment pursuant to § 2B3.2(b)(3)(A)(ii) because

firearms were used in the collection of the "dime" tax. (*Id.* at ¶ 31). The PSR arrived at an adjusted offense level of 29 for Count One. (*Id.* at ¶ 35).

As to Count Two, conspiracy to distribute 50 grams of methamphetamine and 100 grams of heroin, the PSR calculated a base offense level of 38, pursuant to § 2D1.1(a)(5). (*Id.* at ¶ 36). The PSR then applied a two-level upward adjustment because the offense involved possession of a dangerous weapon pursuant to § 2D1.1(b)(1). (*Id.* at ¶ 37). The PSR applied another two-level upward adjustment pursuant to § 2D1.1(b)(2) because the defendant participated or ordered multiple home invasions during the course of the conspiracy. (*Id.* at ¶ 38).

The PSR arrived at an adjusted offense level of 42 for Count Two. (*Id.* at ¶ 42). The PSR calculated a combined adjusted offense level of 42 using grouping. (*Id.* at ¶ 46). After a total three-level downward adjustment for acceptance of responsibility, the total offense level was 39. (*Id.* at ¶ 50). Carrizales faced a maximum term of imprisonment of twenty years as to Count One. (*Id.* at ¶ 79). As to Count Two, he faced a minimum term of five years and a maximum of forty years. (*Id.*). Based upon a total offense level of 39 and a criminal history category of V, the Guidelines imprisonment range was 360 months to life. (*Id.* at ¶ 80). However, because the statutorily authorized maximum sentence was less than the maximum of the applicable Guidelines range, the range became 360 months to 720 months pursuant to § 5G1.2(b). (*Id.*).

Carrizales filed objections to the PSR and a sentencing memorandum requesting a sentence of sixty months on the instant case and twenty-four months on the revocation of supervised release. (ECF Nos. 1577-3 & 1548). In response, the Government filed a Sentencing Memorandum, Objections to the Pre-Sentence Report and Response to Defendant's Objections. (ECF No. 1577-2).

The probation officer then issued a revised PSR. (ECF No. 1578). The revised PSR made no change to the adjusted offense level of 29 for Count One. (*Id.* at ¶ 38). However, with respect to Count Two, the revised PSR applied an additional two-level upward adjustment pursuant to § 2D1.1(b)(4) because the TMM distributed narcotics in TDCJ and BOP facilities throughout the conspiracy and while the case was pending. (*Id.* at ¶ 42). The PSR arrived at an adjusted offense level of 44 for Count Two. (*Id.* at ¶ 46).

The revised PSR then calculated a combined adjusted offense level of 44 using grouping pursuant to § 3D1.4. (*Id.* at ¶ 50). The revised PSR did <u>not</u> award a downward adjustment for acceptance of responsibility pursuant to § 3E1.1 based on Carrizales' behavior involving continuing criminal conduct in the GEO. (*Id.* at ¶ 52). The PSR arrived at a total offense level of 43 pursuant to Chapter 5, Part A (comment n.2), which provides that in those rare instances where the total offense level is calculated in excess of 43, the offense level will be treated as a level 43. (*Id.* at ¶ 53). Based upon a total offense level of 43 and a criminal history category of V, the Guidelines imprisonment range was life imprisonment. (*Id.* at ¶ 83). However, because the statutorily authorized maximum sentence was less than the maximum of the applicable Guidelines range (life), the Guidelines range became 720 months pursuant to § 5G1.2(b). (*Id.*).

Carrizales then filed a Motion for Leave to Make His Objections to the PSR a Matter of Record. (ECF No. 1606). In that motion, he indicated that he made numerous objections to the PSR directly to the probation officer, which did not appear of record by an addendum to the PSR or otherwise. (*Id.* at 1). Carrizales set forth in the motion sixteen "Continuing Objections to [the] PSR." (*Id.* at 1-3). However, at sentencing, Mr. Cazier represented to the Court that he was withdrawing objections to the PSR and any pending motions with respect to the Guidelines calculations in the PSR. (ECF No. 2137-2 at 2). The parties jointly recommended a fifteen-year

sentence for this criminal case and twenty-four months on the revocation in Case No. 5:09-cr-465-XR-3 to run consecutively. (*Id.* at 3). Carrizales then gave his consent on the record to withdraw the objections to the PSR and agreed to the proposed recommended sentence. (*Id.* at 4). The Court sentenced Carrizales to a 180-month concurrent term of imprisonment for Counts One and Two to run consecutive to the twelve-month sentence imposed in Case No. 5:09-cr-465-XR-3, a total five-year term of supervised release, and a $200.00 special monetary assessment. (ECF No. 1638).

On September 2, 2020, the Court received the pending Section 2255 Motion and supporting affidavit, in which Carrizales asserts claims of ineffective assistance of counsel in connection to his plea negotiation and sentencing. (ECF No. 2082). The Government filed a Response in opposition thereto, which includes Mr. Cazier's declaration under oath. (ECF No. 2132). The Government further supplemented the record with excerpts of the transcripts of the rearraignment and sentencing hearing. (ECF No. 2137).

## APPLICABLE LAW

### 1. Legal Standard

A federal defendant may move to vacate, set aside, or correct his sentence if: (1) the imposition of the sentence was in violation of the Constitution or the laws of the United States; (2) the District Court that imposed the sentence lacked jurisdiction; (3) the sentence imposed was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). Thus, § 2255 post-conviction relief is reserved for errors of constitutional dimension and other injuries that could not have been raised on direct appeal and, if left unaddressed, would result in a complete miscarriage of justice. *See, e.g., United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998); *United States v. Payne*, 99 F.3d 1273, 1281 (5th Cir. 1996).

### 2.  Waiver of the Right to Appeal

A defendant may waive his right to direct appeal and collateral attack of a conviction and sentence by means of a plea agreement as long as the waiver is both knowing and voluntary. *See*, *e.g.*, *United States v. Bond*, 414 F.3d 542, 544 (5th Cir. 2005); *United States v. McKinney*, 406 F.3d 744, 746 (5th Cir. 2005); *United States v. Portillo*, 18 F.3d 290, 292 (5th Cir. 1994). As the Fifth Circuit stated in *Portillo*:

> [W]hen the record of the Rule 11 hearing clearly indicates that a defendant has read and understands his plea agreement, and that he has raised no question regarding a waiver-of-appeal provision, the defendant will be held to the bargain to which he agreed, regardless of whether the court specifically admonished him concerning the waiver of appeal.

*McKinney*, 406 F.3d at 746 (quoting *Portillo*, 18 F.3d at 293). A district court must first determine whether the waiver was voluntary and knowing, and then evaluate whether the waiver "applies to the circumstances at hand, based upon the plain language of the agreement." *Bond*, 414 F.3d at 544 (citing *McKinney*, 406 F.3d at 746–47). A defendant knowingly enters a waiver when "the defendant fully understands the nature of the right and how it would likely apply in general in the circumstances − even though the defendant may not know the specific detailed consequences of invoking it." *United States v. Ruiz*, 536 U.S. 622, 629 (2002). A plea qualifies as intelligent when the criminal defendant enters it after receiving "real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." *Bousley v. United States*, 523 U.S. 614, 618 (1998).

The Supreme Court's decision in *Boykin v. Alabama* requires a hearing prior to entry of a guilty plea, at which the Court must elicit an affirmative showing that the decision to plead guilty was voluntarily and intelligently made. 395 U.S. 238, 243 (1969); *Matthew v. Johnson*, 201 F.3d 353, 367 n.22 (5th Cir. 2000). Rule 11 of the Federal Rules of Criminal Procedure provides

procedural safeguards for assuring guilty pleas are voluntary and knowing, by requiring a judge to ensure the defendant understands the law governing his crime in relation to the facts of his case, as well as his rights as a criminal defendant. *United States v. Vonn*, 535 U.S. 55, 62 (2002).

However, a determination of whether a defendant understands the consequences of his guilty plea, including the waiver of his right to appeal or collaterally attack his conviction and sentence, does not require the trial court to conclude the defendant has a perfect understanding of the consequences; the Court must only establish the defendant understands the charges and has a realistic understanding of the consequences. *United States v. Gracia*, 983 F.2d 625, 627–28 (5th Cir. 1993). The Court must also ensure there was no coercion to enter the guilty plea. *Id.* Compliance with the admonishments required under Rule 11 "provides prophylactic protection for the constitutional rights involved in the entry of guilty pleas." *Id.* at 627.

### 3. Ineffective Assistance of Counsel

Even if a defendant waives his right to appeal or collaterally attack his plea and sentence, he can avoid those waivers based on a claim of ineffective assistance of counsel if he shows "the claimed assistance directly affected the validity of that waiver or the plea itself." *United States v. White*, 307 F.3d 336, 343 (5th Cir. 2002). An ineffective assistance of counsel claim in the context of a guilty plea is subject to the same standard as any other ineffective assistance claim, *i.e.*, the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To successfully state a claim of ineffective assistance of counsel under *Strickland*, a prisoner must demonstrate counsel's performance was deficient and the deficient performance prejudiced his defense. *Id.* at 687. The failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *Id.* at 696.

The proper standard for attorney performance is that of reasonably effective assistance. *Id.* at 688. When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that, considering all the circumstances, counsel's representation fell below an objective standard of reasonableness. *Id.* A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. *Id.* at 687–89. To determine whether counsel's performance was constitutionally deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Id.* at 689. An attorney's strategic choices, usually based on information supplied by defendant and from a thorough examination of relevant facts and law, are virtually unchallengeable. *Jones v. Jones*, 163 F.3d 285, 300 (5th Cir. 1998), *cert. denied*, 528 U.S. 895 (1999).

When a prisoner challenges his plea based on ineffective assistance of counsel, the "prejudice" requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). To satisfy this requirement, the prisoner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent the alleged errors of counsel. *Strickland*, 466 U.S. at 695–96. In this analysis, a defendant's sworn statements made to the Court when a guilty plea is entered carry a strong presumption of verity, and the "subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

With respect to sentencing issues, the prisoner must establish a reasonable probability that, but for counsel's errors with respect to sentencing matters, he would have received less time in prison. *See United States v. Grammas*, 376 F.3d 433, 436–8 (5th Cir. 2004); *Glover v. United States*, 531 U.S. 198, 203 (2001).

## DISCUSSION

### 1.  Ineffective assistance of counsel with respect to plea negotiations

Carrizales asserts that counsel rendered ineffective assistance during plea negotiations by advising Carrizales to reject the Government's "first" plea offer. (ECF No. 2082 at 12-13). Carrizales alleges he "wanted to plead out to the Government's stipulated drug quantity [of] 51 grams of a meth/mixture for sentencing purposes," but counsel advised Carrizales he was not going to let him plead guilty to a "dummy plea" with the only benefit being a three-level reduction for acceptance of responsibility. (*Id.* at 9, 12-13). Carrizales states he rejected the plea offer based on counsel's advice. (*Id.*).

Carrizales further avers that counsel advised him against entering into an open plea without the benefit of a plea agreement because "the prosecutors wouldn't allow it and it wouldn't be a wise decision to do so because the Government could bring more charges in the future." (*Id.* at 9). Carrizales also asserts that counsel advised him he would have to cooperate with the Government in order to receive a conditional plea. (*Id.*).

Carrrizales further alleges that, when a new prosecutor rescinded all plea offers and offered new ones, counsel asked for a "new" plea offer that provided something in return for pleading guilty. (*Id.* at 10). According to Carrizales, Mr. Cazier advised him to sign the new Plea Agreement the Government offered because the plea deadline was a week away and warned that if Carrizales rejected it, the Government would supersede the case with charges under the Racketeer Influenced

11

and Corrupt Organization Act (RICO), enhancements under 21 U.S.C. § 851, and raise the drug quantity. (*Id.*). Carrizales complains that he signed the Plea Agreement with "no plea bargaining done by counsel," and the only benefit of the accepted plea was that it protected him against future charges and provided for a three-level reduction for acceptance of responsibility. (*Id.*).

Carrizales further contends that, at the plea colloquy, he discussed with counsel that he was pleading to his overt acts only, and counsel reaffirmed that Carrizales was responsible for two ounces of a methamphetamine mixture and Hobbs Act conspiracy. (*Id.* at 11). After reading the Plea Agreement, Carrizales states he told counsel he did not agree with the way the firearms were written into the agreement, but counsel told Carrizales not to argue about that because the proceedings were going to begin. (*Id.*).

Mr. Cazier filed a declaration under oath in response to Carrizales' claims, wherein he details his representation of Carrizales. (ECF No. 2132-1). Mr. Cazier explains that he requested and obtained authority to employ Mr. Olvera, the mitigation expert, to structure a plea agreement and later in responding to the PSR. (*Id.*). Regarding Carrizales' specific claim that Mr. Cazier advised him to reject a plea offer, Mr. Cazier responds as follows:

> Was there a plea offer that was rejected prior to the accepted plea? Not to my best recollection. There were however a number of conversations between myself and AUSA David Shearer (now retired). David and I exchanged several emails during plea negotiations . . . I do not recall a specific offer and have no record of presenting a specific offer to my client. I do have a record of recommending that we not sign a plea agreement at that time. That recommendation was made in writing.

(ECF No. 2132-2 at 1). Mr. Cazier further avers:

> Did Mr. Carrizales request/want to make an open plea to the court or a conditional plea? We did discuss an open plea. What prompted the plea ultimately entered was the filing of GOVERNMENT'S ADVISORY TO THE COURT AND PARTIES REGARDING PLEA AGREEMENTS. (Doc. No. 840). The ADVISORY is the "price of poker is going up" document we spoke of. There was never a clear statement by the government on just what a superseding indictment might involve. The assumption on the defense side was it would be Continuing Criminal Enterprise

> or possibly a Rico Murder. There was a rumor of a snitch being murdered. I asked Mr. Leachman if an open plea would take a Continuing Criminal Enterprise off the table. I was told no. This was relayed to Mr. Carrizales and there was no further discussion of an open plea. The Plea Agreement . . . didn't give us much but it did give us no further charges. There was never a discussion of a conditional plea because there was never an appealable pretrial ruling against us."

(ECF No. 2132-2 at 1; ECF No. 2132-3 at 1).

The Sixth Amendment right to counsel extends to the plea-bargaining process, where defendants are "entitled to the effective assistance of competent counsel." *Anaya v. Lumpkin*, 976 F.3d 545, 550 (5th Cir. 2020) (quoting *Lafler v. Cooper*, 566 U.S. 156, 162 (2012)). Indeed, this Circuit has observed that providing counsel to assist a defendant in deciding whether to plead guilty is "'[o]ne of the most precious applications of the Sixth Amendment.'" *United States v. Rivas-Lopez*, 678 F.3d 353, 356 (5th Cir. 2012) (quoting *United States v. Grammas*, 376 F.3d 433, 436 (5th Cir. 2004)).

Claims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test set forth in *Strickland*, and thus, are established in the same manner as any other ineffective assistance of counsel claim by demonstrating deficient performance and prejudice. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985); *Teague v. Scott*, 60 F.3d 1167, 1170 (5th Cir. 1995). In *Lafler*, the Court affirmed that the *Strickland* test applies to ineffective assistance of counsel claims when counsel's ineffective advice causes a defendant to reject a favorable plea offer, and the defendant is subjected to a less favorable outcome in further trial proceedings. *Lafler*, 566 U.S. at 163-164.

To show prejudice when a defendant alleges that counsel's deficient performance caused him to reject a plea offer, he must show that, but for the ineffective advice of counsel, there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction

or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed. *Lafler*, 566 U.S. at 164.

Carrizales' allegations of ineffective assistance of counsel with respect to plea negotiations are without merit. Regarding Carrizales' claim that counsel erroneously advised him to reject the Government's "first" plea offer, his allegations are too vague and conclusory to warrant relief. *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) (conclusory allegations of ineffective assistance of counsel are insufficient to warrant relief).

Carrizales vaguely refers to a "first" plea offer that "stipulated [a] drug quantity of 51 grams of a meth/mixture for sentencing purposes" and provided for a downward adjustment for acceptance of responsibility, but he provides absolutely no details regarding when the Government supposedly made this plea offer to counsel, when counsel rejected it, or what additional terms it contained. (ECF No. 2082 at 9, 12-13). Without more details, Carrizales cannot establish that counsel was deficient for allegedly advising him to reject it. Moreover, Carrizales fails to allege sufficient facts to demonstrate prejudice, *i.e.*, that counsel's deficient advice resulted in the rejection of a plea bargain that would have resulted in a more favorable sentence than the outcome of his subsequent guilty plea.

Carrizales states he "wanted to plead out," but fails to allege facts establishing that he would have accepted the rejected plea offer had he been afforded effective assistance of counsel. Additionally, because the Government rescinded all plea offers in this case on April 4, 2018, the timing of the proposed plea offer is critical to establish that the plea would have been entered without the prosecution canceling the offer. Carrizales provides no facts establishing when the "first" plea agreement was offered and rejected.

14

Finally, although Carrizales contends that "prejudice can be shown by the loss of the plea opportunity resulting in a conviction on more serious charges and the imposition of a more severe sentence," this assertion is conclusory. Carrizales does not allege facts establishing that the terms of the rejected plea agreement were more favorable than the plea he accepted.

The factual basis in support of Carrizales' guilty plea stipulated that Carrizales "knowingly conspired to possess [with the intent to distribute] more than 50 grams of methamphetamine and/or 100 grams of heroin" based on the two one-ounce drug transactions occurring in December 2015 and March 2016. (ECF No. 928 at 6). Additionally, it provided for a three-level reduction for acceptance of responsibility if certain conditions were met *and* prevented the Government from bringing additional charges against Carrizales. (*Id.* at 8-9). Thus, even accepting as true Carrizales' allegation that the rejected plea offer stipulated "51 grams of meth/mixture" and provided for a three-level reduction for acceptance of responsibility, he fails to demonstrate a reasonable probability that his conviction or sentence under the "first" offer's terms would have been less severe than under the judgment and sentence ultimately imposed. (ECF No. 2082 at 9, 12-13).

Notwithstanding a dearth of factual support, Carrizales provides no independent indicia of the likely merit of his allegation of a rejected plea offer resulting in prejudice. Nothing in the record supports Carrizales' specific allegation of a rejected plea offer. Mr. Cazier states under oath in his declaration that although he emailed back and forth with the prosecutor during plea negotiations, the discussions never ripened into a specific offer. Mr. Cazier has no record of presenting a specific offer to Carrizales, and no *Lafler* hearing was held. Carrizales' bare allegations of a rejected plea are insufficient to warrant relief.

Insofar as Carrizales alleges that counsel's advice regarding open and conditional pleas fell outside of the wide range of reasonably effective assistance, his challenge also fails. The record

15

clearly establishes that Mr. Cazier's advice against an open plea was a strategic decision to protect Carrizales from facing additional charges, which the Government warned were forthcoming, and Carrizales concedes in his affidavit that Mr. Cazier advised him that an open plea was not a wise decision because the Government could bring more charges in the future. Mr. Cazier explains that he had reason to believe the Government planned to file additional charges of Continuing Criminal Enterprise or possibly a RICO murder, and the Government confirmed that an open plea would not take Continuing Criminal Enterprise off the table. Carrizales therefore fails to demonstrate that counsel's advice was deficient or that he suffered prejudice by not pleading guilty to an open plea.

Regarding a conditional plea, Mr. Cazier explains there was never a discussion of a conditional plea because there was never an appealable pretrial ruling against Carrizales. Rule 11 of the Federal Rules of Criminal Procedure provides that "[w]ith the consent of the court and the government, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right to have an appellate court review an adverse determination of a specified pretrial motion. A defendant who prevails on appeal may then withdraw the plea." Carrizales alleges no facts establishing an appealable pretrial ruling against him or that the Government or the Court would have consented to a conditional plea. Carrizales therefore fails to demonstrate that counsel's ineffective assistance deprived him of a conditional guilty plea.

Finally, insofar as Carrizales asserts that counsel rendered ineffective assistance in ultimately advising him to plead guilty to the Plea Agreement in this case, he has not made a sufficient showing under *Strickland*. The record reflects that the evidence against Carrizales was strong. He had considerable criminal history and was serving a term of supervised release for another Hobbs Act conspiracy conviction when he was indicted in this case.

Mr. Cazier hired a mitigation expert to assist in structuring the Plea Agreement and to assist in sentencing matters. He exchanged several emails with AUSA David Shearer, but no plea offer resulted. When AUSA Russell Leachman took over the case, he gave Carrizales the option to plead guilty to the indictment or face a superseding indictment. The Plea Agreement protected Carrizales from additional charges that the Government indicated were forthcoming. The record reflects Carrizales knowingly and voluntarily pleaded guilty, and that Mr. Cazier rendered reasonably effective assistance under the circumstances. Carrizales' claims of ineffective assistance of counsel regarding plea negotiations are therefore without merit.

### 2. Ineffective assistance of counsel with respect to sentencing

Carrizales further asserts that counsel rendered ineffective assistance with respect to sentencing by "negotiating away" his objections to the PSR and failing to challenge the denial of acceptance of responsibility points on the grounds of vindictive prosecution and prosecutorial misconduct. (ECF No. 2082 at 4; 15).

Carrizales alleges that counsel relayed "threats" from the Government that if Carrizales did not withdraw his objections to the PSR and agree to a fifteen-year recommended sentence for Counts One and Two, he would face a life sentence. (*Id.* at 5-6). Carrizales asserts he had meritorious grounds upon which to challenge the PSR, and he faults counsel for advising him to withdraw the PSR objections in favor of the agreed-upon sentence recommendation. (*Id.*).

Specifically, Carrizales alleges that the PSR erroneously calculated the base offense level for Count Two at 38, when the base offense level for a drug quantity of two ounces of methamphetamine under the Guidelines is 24. (*Id.* at 6). Carrizales further argues, regarding the enhancements the PSR applied, that "had counsel not advised [him] to waive his objections to the eleven level point enhancements, it is likely that the offense level would have dropped even lower

17

with a successful challenge to any one of the enhancements." (*Id.*). Carrizales finally argues that the Court would have sustained his objection to the PSR's denial of acceptance of responsibility points had counsel not advised Carrizales to withdraw it, which would have brought his Count One base offense level down by at least two points, from 29 to 27. (*Id.* at 4).

Mr. Cazier responded as follows regarding his representation of Carrizales at sentencing:

When the initial PSR came back it was a shock, but in my opinion, plainly wrong. The recommendation was for a sentence of from 30 to 60 years. We had anticipated a guideline range of from 210 to 262 months, perhaps much lower. Our objections to the PSR were met by a recommendation that Mr. Carrizales be denied his acceptance points. The war was on.

As our sentencing date approached we began seeing sentences being pronounced indicating the Court's proportionality considerations. I was also hearing the government was offering agreed sentencing recommendations conditioned on a waiver of PSR objections. On September 6, 2019, I called AUSA Russ Leachman to ask if we could agree on a sentencing recommendation. His answer was yes. After the usual back and forth we agreed on 15 years on the new case and 2 years consecutive on the supervised release. We would waive objections on the record. This agreement was made despite the Government's previous refusals to consider a binding plea agreement.

This was a compromise of the government's position as shown by their Sentencing Memorandum and the PSR and our position. The compromise tilted in our favor in my opinion. I consulted with Mr. Olvera who supported the compromise. I immediately went to visit Mr. Carrizales who agreed without reservation. Mr. Carrizales and I were of the opinion that we had no choice but to say yes. Mr. Carrizales asked me to call his sister which I did. I confirmed the agreement with Mr. Leachman.

(ECF No. 2132-2).

Carrizales' claims of ineffective assistance of counsel at sentencing are meritless. The PSR arrived at a base offense level of 38 rather than 24 for Count Two because the drug quantity included relevant conduct pursuant to U.S.S.G. § 1B1.3. The record reflects that Mr. Cazier vigorously challenged the base offense level for Count Two as well as other aspects of the PSR. He enlisted the help of Mr. Olvera and filed objections to the PSR, a sentencing memorandum,

and a response to the Government's sentencing memorandum. Mr. Cazier argued that Carrizales' role in the conspiracy was minimal, and the drug quantity should not include any relevant conduct of his co-conspirators. He argued for an offense level of 24, which reflects only the two ounces of methamphetamine to which Carrizales pleaded guilty.

The Government argued for a base offense level of 38, which reflected the quantity of drugs involved in the conspiracy. The Government argued that Carrizales was involved in the conspiracy long before the FBI investigation began, and the drug quantity was reasonably foreseeable to Carrizales based on his knowledge of, and participation in, the criminal events of the TMM. The Government maintained that the drug quantity for the conspiracy was determined based upon extensive coconspirator information and law enforcement intelligence.

The probation officer declined to revise the base offense level for Count Two in the PSR based on Mr. Cazier's objections, finding Carrizales responsible for all acts reasonably foreseeable in connection with the criminal activity pursuant to § 1B1.3. The probation officer asked the Court to rule on the objections at sentencing. Additionally, the PSR denied acceptance of responsibility points based on continuing criminal activity after an incident that occurred at the GEO on May 11, 2019, where Carrizales was assessed a disciplinary conviction for possession of a narcotic, controlled substance, or unauthorized drug.

Going into sentencing, Carrizales faced a Guidelines sentence of 720 months of imprisonment. The Government was prepared to present evidence at sentencing to substantiate Carrizales' relevant conduct as to the drug quantity, the possession and use of firearms in the collection of the "dime," and the total amount of money extorted during the conspiracy. Regarding the denial of acceptance of responsibility points, Carrizales does not assert that the disciplinary

conviction was overturned or expunged, nor does he point to any other valid grounds upon which counsel should have objected to the denial of the points at sentencing.

The Court cannot say that, under the circumstances, counsel's performance in advising Carrizales to accept the agreed recommended sentence of fifteen years was deficient. Mr. Cazier advocated zealously for Carrizales, however, given the exposure Carrizales faced, Mr. Cazier's advice to withdraw the objections in favor of the fifteen-year agreed sentence recommendation was not unreasonable. The fifteen-year sentence was a fraction of the Guidelines sentence. Carrizales further gave his consent to withdraw the objections in open court at his sentencing hearing.

Moreover, Carrizales fails to establish a reasonable probability that he would have received less than the negotiated sentence of fifteen years in prison had counsel not advised him to withdraw the objections. The revised PSR arrived at a total offense level of 43. To establish prejudice, Carrizales must demonstrate a reasonable probability that he would have been awarded a reduction of at least twelve offense level points. Carrizales fails to establish that the Court would have sustained any of his objections, let alone enough objections to account for a twelve-level reduction. Accordingly, Carrizales fails to show he was prejudiced by counsel's advice to withdraw the objections in favor of the agreed sentence recommendation.

Finally, Carrizales' claim that counsel was ineffective for "not acting on prosecutorial misconduct involving vindictiveness" is also baseless and controverted by the record. (ECF No. 2082 at 15). Carrizales alleges that the Government denied him acceptance of responsibility points because he "refused to admit he had deeper involvement in [the] conspiracy than charged in Counts One and Two." (*Id.*).

20

As previously noted, the PSR denied Carrizales acceptance of responsibility points based on continued criminal activity after he was assessed a disciplinary case for possession of a controlled substance while at the GEO facility. Carrizales fails to demonstrate any evidence of prosecutorial misconduct. Moreover, even assuming for the sake of argument he could demonstrate that counsel's deficient performance deprived him of three acceptance of responsibility points to which he was entitled, a three-level reduction would not have resulted in a sentence less than fifteen years. For these reasons, Carrizales' claims of ineffective assistance of counsel with respect to sentencing are denied.

## EVIDENTIARY HEARING

An evidentiary hearing on a § 2255 motion is required "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). A district court's decision not to hold an evidentiary hearing is reviewed for abuse of discretion. *United States v. Edwards*, 442 F.3d 258, 264 (5th Cir. 2006) (quoting *Cervantes*, 132 F.3d at 1110). Because the issues presented in this case can be resolved on the basis of the record, the Court finds an evidentiary hearing is not required.

## CONCLUSION

Carrizales entered a knowing and voluntary guilty plea pursuant to a Plea Agreement. He fails to demonstrate ineffective assistance of counsel in his plea proceedings or at sentencing. Accordingly, Carrizales' Section 2255 Motion is denied.

## CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a proceeding under § 2255 "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Pursuant to Rule 11 of the Federal Rules Governing Section 2255 Proceedings,

the District Court must issue or deny a certificate of appealability when it enters a final order adverse to the movant.

A certificate of appealability may issue only if a movant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where the Court rejects a movant's constitutional claims on the merits, "the [movant] must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*

In this case, reasonable jurists could not debate the denial of Carrizales' § 2255 motion on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Thus, a certificate of appealability shall not be issued.

Accordingly,

**IT IS ORDERED** that Movant Ramiro R. Carrizales' Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255 (ECF No. ECF No. 2082) is **DENIED**.

**IT IS FURTHER ORDERED** that all pending motions, if any, are **DISMISSED AS MOOT**, and this case is now **CLOSED**.

**FINALLY**, **IT IS ORDERED** that a certificate of appealability is **DENIED**.

**SIGNED** on this 25th day of May, 2021.

_____
Xavier Rodriguez
United States District Judge